UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
DESMOND FRANCIS,                                             :     **MEMORANDUM**
                                                             :     **DECISION AND ORDER**
                                    Plaintiff,               :
                                                             :     09 Civ. 3391 (BMC)
                    - against -                              :
                                                             :
JAMES CONWAY, SUPERINTENDENT                                 :
Attica Correctional Facility,                                :
                                                             :
                                    Respondent.              :
------------------------------------------------------------ X

**COGAN**, District Judge.

     Petitioner *pro se* brings this habeas corpus proceeding under 28 U.S.C. §2254. He was convicted in connection with the shooting death of one Duane Cherrington on two counts of Criminal Possession of a Weapon in the Second Degree, for which he received consecutive sentences of five and seven years. The issue at trial was not whether he possessed the weapons; that was conceded. Rather, the issue was whether he possessed the weapons "with the intent to use them unlawfully." Petitioner claimed that he was in danger from the victim, who was a violent individual, and since the weapons were for self-protection, he had no intent to use them unlawfully.

     The Appellate Division affirmed his conviction on the merits except for two points, which were rejected both on procedural grounds and on the merits, and the New York Court of Appeals denied leave to appeal. People v. Francis, 49 A.D.3d 552, 853 N.Y.S.2d 366 (2d Dep't 2008), leave to appeal denied, 10 N.Y.3d 934, 862 N.Y.S.2d 351 (2008).

Petitioner relies on his Appellate Division brief in support of his petition, and has filed a reply brief here that does not substantively add to those claims. Familiarity with the facts is assumed, except some facts are set forth below as necessary to address petitioner's claimed points of error.

## 1. Admission of Videotaped Confession

Petitioner relies on the fact that in ruling that his videotaped confession before an Assistant District Attorney was voluntary, the hearing court mistakenly thought he confessed two hours after he was read his Miranda rights instead of six hours, and that the hearing court should have inquired as to what transpired during those six hours. However, the argument ignores the fact that petitioner was read and acknowledged his rights twice – once upon his arrest, and then again by the Assistant District Attorney immediately prior to giving his videotaped statement. The immediacy of the confession following renewed Miranda warnings moots any issue regarding the trial court's computational error.

Aside from the computational error in the hearing court's decision, reflecting an inaccurate conversion of 24-hour to 12-hour timekeeping, there was no evidence at all in the hearing record to even suggest that the confession was involuntary, as the Appellate Division noted. The hearing court watched the videotape of petitioner's confession and thus was able to observe his demeanor before concluding that petitioner's confession was voluntary. The hearing court's determination of the facts surrounding the statement was not unreasonable in light of the evidence, and the Appellate Division's affirmance of the finding that his statement was voluntary was neither contrary to, nor an unreasonable application of, Supreme Court authority. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000).

## 2. Grand Jury Proceedings

Petitioner asserts that his grand jury was improperly instructed as to presumptions under state law and the state trial court therefore erred in not dismissing the indictment against him. This claim is not cognizable on federal habeas corpus review. See United States v. Mechanik, 475 U.S. 66, 106 S. Ct. 938 (1986); Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); Mills v. Girdich, 614 F. Supp. 2d 365, 381 (W.D.N.Y. 2009).

## 3. Discovery of Victim's Criminal Record

Petitioner claims that the trial court erred in denying his motion for discovery of the victim's criminal record and its admission into evidence. His argument was that showing violent tendencies on the part of the victim would either enhance his justification defense or, alternatively, negate the "intent to unlawfully use" element of the second degree weapons possession charges against him. The prosecutor argued that justification is not applicable to a weapons possession charge, and even if it was, only those violent acts already known to petitioner at the time of the possession would be relevant.

It is not at all clear that this is an exhausted federal constitutional claim, as it was not presented as such to the Appellate Division. No federal authorities were cited and it was analyzed solely as a potential abuse of discretion under state law. See Picard v. Connor, 404 U.S. 270, 92 S. Ct. 509 (1971); Daye v. Attorney Gen. of New York, 696 F.2d 186, 191-92 (2d Cir. 1982); see also Willette v. Fischer, 508 F.3d 117, 121 (2d Cir. 2007).

Assuming *arguendo* that there is a properly asserted federal constitutional claim, it faces a high hurdle. It is a ruling on a discovery application that does not fall within Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) or any other Supreme Court decision mandating discovery. Although trial counsel did move for the admission of the non-produced record, it is difficult to view the ruling denying that motion as an evidentiary issue because, as a result of the

denial of discovery, there was no evidence to offer and not even a proffer as to what the record might have shown.

However, even if viewed as an evidentiary issue, it would have to cause fundamental unfairness in petitioner's trial to warrant relief. As the Second Circuit held in Taylor v. Curry, 708 F.2d 886, 890-91 (2d Cir. 1983): "Erroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." (emphasis in original.) This constitutes a "heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." Bonet v. McGinnis, 98-CV-6529, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal quotations omitted).

The showing cannot nearly be met here because petitioner's own videotaped confession described his knowledge of the victim's propensity towards violence, and his counsel relied on it during opening and even more so during closing argument. In summation, for example, she stated:

> The D.A. has not given you anything to show that there's any other reason why he [petitioner] had that gun other than to protect himself from Duane Cherrington, who he knew had threatened him, who he knew had committed violent acts in the past against others, based on Duane's own words to him [petitioner], almost bragging to him about a robbery he [Cherrington] had committed, about taking a gun away from someone, about participating in a robbery that included a killing. That is what he [petitioner] knew about Duane Cherrington.

The trial court concluded that allowing discovery and the introduction of additional evidence of possible crimes that the victim had committed, of which petitioner did not know (if there was any such evidence), would only be used to unfairly prejudice the jury against the victim. This exercise of discretion does not present a constitutional issue, and the Appellate Division's

4

affirmance of it is not contrary to, or an unreasonable application of, any Supreme Court authority.

## 4. Denial of Recall of Prosecution Witness

Prior to the prosecutor resting, defense counsel requested a missing witness instruction because the criminal complaint sworn to by the investigating detective referred to interviewing witnesses who the Assistant District Attorney did not call. The trial court conducted a hearing out of the presence of the jury in which the investigating detective testified. It quickly became apparent that although the witnesses might have assisted the defense had petitioner been indicted for murder, which he was not, those witnesses would not aid the defense on the weapons possession charges that he faced, and defense counsel thereupon withdrew her request for a missing witness charge.

However, she nevertheless stated briefly, as an alternative to requesting the missing witness charge, that because of what she felt was an inconsistency between the detective's police report and the criminal complaint that he had filed regarding what he had been told by the witnesses, she should have the right to recall the detective before the jury for further cross-examination. The trial court did not directly rule on that request. It continued to view the issue in the context in which defense counsel had raised it, namely, as part of the argument that petitioner was entitled to a missing witness charge. As to that, the court made a reasoned ruling, noting that defense counsel had withdrawn the request for the charge, but even if she had not, the hearing made it clear that these witnesses would not help the defense and thus there was no basis for the charge.

Defense counsel did not pursue her reference to recalling the detective. Instead, she immediately reinstated or sought to reargue her request for a missing witness charge, arguing

that even though the evidence had shown the subject witnesses to be uncooperative, the prosecutor should have obtained a material witness order. The trial court noted that defense counsel had the names of the witnesses from discovery, and the parties argued about whether the documents turned over were sufficiently legible so that defense counsel could recognize the names. The court thereupon reiterated its ruling that, in any event, no missing witness charge was required.

In the Appellate Division, petitioner's counsel sought to portray this exchange as constituting a denial of petitioner's right of confrontation under the Sixth Amendment through improper limitation of his ability to cross-examine the detective. As the description set forth above demonstrates, that is putting a spin on it that cannot be squared with this record. But putting aside this rather glaring issue of procedural bar – because the Appellate Division did not hold that the objection was unpreserved – there was no denial of the right of confrontation. Defense counsel had asked all of the questions she wanted in her cross-examination of the detective, and when she did, she was in possession of the same criminal complaint and police report that led to her suggestion of recalling him to make a further run at impeachment. Her contention that she could not read the documents well enough, especially in the absence of any indication that she asked for better copies, and the prosecutor's assertion that they were in fact legible, does not raise an issue of constitutional proportions.

A defendant has the right to confront his accusers and should be allowed to cross-examine them to elicit possible biases or inconsistencies. Davis v. Alaska, 415 U.S. 308, 315-16, 94 S. Ct. 1105 (1974). But this right is not absolute. Trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is repetitive or only marginally relevant." Young v. McGinnis, 411 F. Supp. 2d 278 (E.D.N.Y. 2006) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431 (1986)); see also Taylor v. Illinois, 484 U.S. 400, 410-13, 108 S. Ct. 646 (1988); United States v. Rahme, 813 F.2d 31, 36-37 (2d Cir. 1987).

Here, the issue is not even the scope of cross-examination. Petitioner's counsel fully cross-examined the detective. The issue, instead, was whether, based on information that she professed to learn at the "missing witness" hearing based on her claim that the documents she had received in discovery were illegible, she had the right to recall the witness. Like the scope of cross-examination, the decision of whether to allow the recall of a witness is within the discretion of the trial judge, Lyons v. Conway, 03-CV-503, 2006 WL 2847281, *11 (N.D.N.Y. Sept. 30, 2006). The Appellate Division's affirmance of the trial court's exercise of its discretion was not contrary to, or an unreasonable application of, any Supreme Court authority.

## 5. *Voir Dire* and Jury Instructions

Before a federal court may overturn a conviction due to allegedly erroneous jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973) (internal quotation omitted). Additionally, the Supreme Court has observed that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730 (1977) (footnote omitted). The appropriate inquiry is not whether the trial court gave a faulty instruction, but rather "whether the ailing instruction by itself so

infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147. A party who claims he is entitled to federal habeas relief because of erroneous jury instructions faces a significant hurdle; as the Second Circuit has observed: "The Supreme Court has made it clear that errors in instructions to the jury rarely rise to a constitutional level." Victory v. Bombard, 570 F.2d 66, 69 n.3 (2d Cir. 1978).

In the Appellate Division, petitioner's counsel raised four challenges to the trial court's questions and instructions to the jury. I will address each one separately. I reject them all, singly and collectively, as the Appellate Division's affirmance of the trial court's rulings did not in any way run contrary to, or unreasonably apply, Supreme Court authority.

A. *Description of the Trial Process.* During *voir dire*, the trial court commented that "[t]he attorneys will present the evidence usually by calling witnesses . . .". The essence of petitioner's argument to the Appellate Division was that this improperly shifted the burden of proof by suggesting that if petitioner did not call witnesses at trial, he had not met the trial court's expectation of what he was required to do.

This remark did not shift the burden of proof. The trial court repeatedly instructed the jury that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt; that "the defendant is not required to prove or disprove anything"; and that "the burden of proof never shifts from the People to the defendant." See Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475 (1991) (holding that in assessing the validity of the judge's instructions to the jury, the charge must be read as a whole).

B. *Confused pronoun.* During *voir dire*, in addressing questions to the panel at large, the trial court asked the panel, "Can you assure me that if *I* find guilt beyond a reasonable doubt you will return a verdict of guilty?" (emphasis added). Assuming this is not a transcription error, it is

still not one of constitutional magnitude. The trial court also advised the panel that "those selected as jurors, and I as Judge, perform separate functions." He further explained that:

> As jurors, you are going to be called upon to determine whether or not the evidence which you shall hear and see in this case establishes the defendant's guilt beyond a reasonable doubt of some or all of the charges. . . I, as Judge, will find no facts in this trial.
>
> Only you can decide what really happened, and a verdict as to each count will remain your decision, alone. . . . As Judge, I make no determination of guilt or lack of guilt. . . . I may have to rule on questions concerning the conduct of the trial. Those rulings have nothing to do with whether the defendant is guilty or not guilty . . ..
>
> None of my rulings should be taken by you as any indication . . . that the defendant is guilty or not guilty. That is solely your job to consider.

In the lengthy discourse that trial judges have with panels and juries both during *voir dire* and in the final charge, a verbal slip or two is almost inevitable. Trial judges are not tape recorders or automatons. As long as the description of the trial process fairly advises the jury of the method in which it must undertake its task, there is no constitutional error. Here, in light of the totality of the trial court's remarks to the jury concerning their separate functions, the jury could not possibly have thought that the trial court was going to determine guilt or innocence. The Appellate Division decision so holding was fully consistent with Supreme Court authority. See Victor v. Nebraska, 511 U.S. 1, 114 S. Ct. 1239 (1994) (explaining that to determine if a particular concept was accurately conveyed to a jury, instructions must be taken as a whole).

C. *Denial of Missing Witness Charge.* To warrant a missing witness instruction under New York law, a defendant must establish that: (1) the witness had knowledge material to the trial; (2) the witness would naturally be expected to give noncumulative testimony favorable to the party who failed to call the witness; and (3) the witness is available to the party who would be expected to call the witness. People v. Gonzalez, 68 N.Y.2d 424, 509 N.Y.S.2d 796 (1986). A trial court's "failure to give such a charge will rarely support reversal or habeas relief."

9

Manning v. Walker, 99-CV-5747, 2001 WL 25637, at *9 (E.D.N.Y. Jan. 3, 2001) (internal

quotation omitted). "When the alleged error is one of omission, the petitioner's burden is

especially heavy because it is less likely to be prejudicial than a misstatement of the law."

McBean v. Warden, 08-CV-0150, 2008 WL 5169549, at *18 (N.D.N.Y. Dec. 9, 2008) (internal

quotation and citation omitted).

Here, as noted above, the trial court conducted a hearing to see if the requirements for a

missing witness charge were fulfilled. It discussed and analyzed New York case law in

concluding that they were not. It properly found that none of the three requirements of Gonzalez

were met. These witnesses simply had no material information as to the charges against

petitioner. The Appellate Division's affirmance of this ruling was not contrary to, or an

unreasonable application of, any Supreme Court authority.

D. *Refusal to Charge Justification.* In Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir.

2005), the Second Circuit set forth the methodology for analyzing habeas corpus claims arising

from the failure to give a requested justification charge: "First, was he entitled to a justification

charge? Second, if so, did the failure to give one result in a denial of due process? Third, if so,

did the state court's contrary conclusion constitute an unreasonable application of clear Supreme

Court law?"

Here, the trial court properly recognized that New York law does not require a

justification instruction when the charge is weapons possession in the second degree. See People

v. Pons, 68 N.Y.2d 264, 508 N.Y.S.2d 403 (1986). Defense counsel argued that because

weapons possession in the second degree requires proof of "intent to use" the weapon

"unlawfully," a justified use would negate that intent. That is exactly the argument that the New

York Court of Appeals rejected in Pons. Because New York law does not require a justification

instruction for this charge, the Appellate Division affirmance of the trial court's ruling could not have been contrary to, or an unreasonable application of, Supreme Court authority.

## 6. Prosecutorial Misconduct

Petitioner raised two claims of prosecutorial misconduct in the Appellate Division.

A. *Summation.* In response to defense counsel's summation, in which she stated that the victim had committed violent acts and thus petitioner was justified in carrying a firearm to protect himself, the prosecutor asserted that there was no evidence other than petitioner's uncorroborated statement during his confession that the victim was violent. Petitioner contended that this was improper in light of the denial of his request for discovery of the victim's criminal history (if there was any).

Under New York law, statements during summation are not improper if they constitute a "fair comment on the evidence" at trial or a "fair response to remarks made by the defense counsel during summation." People v. Perez, 794 N.Y.S.2d 439, 440 (2d Dep't 2005); see also People v. Seit, 86 N.Y.2d 92, 99, 629 N.Y.S.2d 998 (1995) (holding that prosecutor's comments did not warrant reversal when made in "fair response to defense counsel's summation"); People v. Halm, 81 N.Y.2d 819, 821, 595 N.Y.S.2d 380 (1993) ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response."). For purposes of federal habeas corpus review, a prosecutor has wide latitude in making his closing argument. United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989). Even where a prosecutor has made improper comments in summation, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181-82, 106 S. Ct. 2464 (1986). To be entitled to habeas relief, a petitioner must show "that he suffered actual

prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868 (1974) (holding habeas relief warranted only where prosecution's claimed misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

Petitioner cannot meet the standard for habeas corpus relief. As noted above, denial of the request for the victim's criminal history was not error. Based upon that, the prosecutor's rebuttal to allegations of petitioner and his trial counsel concerning the victim's prior violent acts was well within the scope of fair comment. Petitioner's argument seems to be built on the assumption that without the criminal history file of the victim, petitioner was unable to corroborate the statements in his confession concerning the victim's prior violent acts, but that is not the case. If there were prior violent acts known to petitioner (and other than petitioner's statements during his confession, we still do not know that), other witnesses to those acts, if there were any, could have been called to corroborate that reputation. The prosecutor's rebuttal was properly based on the record as developed before the jury. There is no Supreme Court authority requiring a prosecutor to withhold fair comment based on a hypothetical possibility which is not before the jury and for which there is no evidence.

B. *Brady/Rosario*. In the Appellate Division, petitioner argued that in discovery the prosecutor had failed to turn over notes of the medical examiner who testified at trial. The record does not indicate any such failure. The witness testified that he did not have his notes with him, only his final report which the prosecutor had sent him, but defense counsel never suggested in any way that *she* did not have those notes. The fact that she chose to cross-examine

him on his report rather than his notes does not mean that the notes were not turned over to her in discovery. There is thus no factual basis for this claim of error in the record.

## 7. Alleged Denial of Suppression ("<u>Mapp</u>") Hearing

Review of this issue in this Court is difficult because the trial court miscommunicated with or misunderstood what had happened before the hearing court or, at least, did not clearly record the results of that communication; petitioner's Appellate Division counsel then misread the record, or took liberties with it; the prosecutor did not explain or respond to the misreading by petitioner's appellate counsel (and has not done so before me either); and the Appellate Division, rather than untangling the knot, summarily rejected the claim on the merits as if it had been raised below when it had never been raised on the merits until it reached the Appellate Division. The following describes what happened.

In the Appellate Division, petitioner's counsel asserted that the investigating detective swore out a false affidavit leading to petitioner's arrest, and thus the arrest was illegal and the recovery of the gun incident to arrest was improper and should have been suppressed. He decried the failure to convene a suppression hearing as constitutional error. However, no such contention, let alone request for a suppression hearing, was ever raised before or during trial. At the pretrial hearing on the suppression of petitioner's post-arrest statements (the <u>Huntley</u> hearing), defense counsel stated that her "understanding is that it [the pretrial hearing] was going to be a <u>Huntley</u>," not a <u>Mapp</u> hearing (a <u>Mapp</u> hearing seeks the suppression of physical evidence, like a gun). There was then a discussion off the record. Back on the record, the <u>Huntley</u> hearing judge, Judge Walsh, stated that the hearing before him would only be a <u>Huntley</u> hearing, not a <u>Mapp</u> hearing, and he told petitioner's counsel that if she wanted to also pursue a <u>Mapp</u> hearing, she should make her motion at the beginning of trial before the trial judge.

13

The Mapp issue that had been discussed off the record before Judge Walsh was placed on the record, for the first time, at the first appearance before the trial judge. Defense counsel argued that since the grand jury had refused to indict petitioner for murder, it had concluded that he did not intend to use the weapon unlawfully, an essential element of the second degree weapons possession charge. Therefore, she reasoned, the seized gun should not be admitted into evidence. This was a rather tenuous argument, but the bottom line is that it was a motion to suppress physical evidence – a Mapp motion – that, if granted would have resulted in suppression of the gun and, likely, dismissal of that charge. Defense counsel stated that she had made it to Judge Walsh at the Huntley hearing, but since it does not appear in that transcript, it must be the case that it occurred during the off-the-record discussion that resulted in Judge Walsh putting off any Mapp hearing issue to the trial court, and defense counsel may have forgotten that the discussion of that issue before Judge Walsh occurred off the record.

The trial court's ruling on this issue is not clear. The parties broke for lunch and when court reconvened, the trial court stated: "We covered preliminary matters this morning. At that time, I believe defense was contending there may have been a Mapp-Dunaway hearing. . . . I spoke directly with Judge Walsh on the phone and he said he indeed made a ruling that there was no Mapp-Dunaway issue." By saying there was "no Mapp-Dunaway issue," the trial judge may have meant that Judge Walsh informed him that he, Judge Walsh, had rejected the Mapp issue as not viable, thus denying the motion. If so, that was wrong because Judge Walsh had never heard that issue, at least not on the record, and had put it off to trial. Yet defense counsel did not seek to correct any misunderstanding.

Alternatively, the trial judge may have meant that Judge Walsh said that he, Judge Walsh, had ruled that any potential Mapp issue was not part of the hearing before him, which would be

consistent with the record, and indeed was what defense counsel agreed to before Judge Walsh. However, it does not appear that this is what the trial judge meant because he made no further mention of the Mapp issue that Judge Walsh had deferred to trial, not even asking defense counsel if she wanted to pursue it. And defense counsel did not mention it further, either at that point or at any point during the trial. Having preserved her contention before the trial judge that morning that the grand jury's refusal to indict for murder necessitated suppression of the gun, defense counsel appears to have been content to let the record suggest that her motion had been denied, whether by Judge Walsh or the trial court.

In any event, what is clear is that the issue raised by petitioner's appellate counsel – that petitioner's arrest was based on a false affidavit and thus the gun should have been suppressed – was never raised by trial counsel. To find it, petitioner's appellate counsel mischaracterized the colloquy, discussed in Points 4 and 5(c) above, in which defense counsel had requested either a missing witness charge or a recall of the investigating detective for further cross-examination. That colloquy was confusing enough on its own in flipping between a request for a missing witness charge and a recall of the detective, but one thing it clearly did not entail was a Mapp motion to suppress the gun as a result of false arrest. Appellate counsel, whether deliberately or mistakenly, made up this supposed Mapp motion out of whole cloth. The Appellate Division then topped off the confusion by not rejecting the claim on procedural grounds, but instead referring to it only generically as one of the "remaining contentions" that were "without merit." Francis, 49 A.D.3d at 554, 853 N.Y.S.2d at 369.

Because the Appellate Division did not invoke a procedural bar, this Court cannot and will not either. See Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992). That leaves me with nothing but a brief colloquy in the middle of trial in which trial counsel purported to raise an

15

alleged inconsistency between the detective's complaint and his report, in which she never requested suppression of the weapon but only a missing witness charge or recall of the detective.

The problem having been thus deconstructed, it is simply resolved by reverting to the standard of review under the Anti-Terrorism and Death Penalty Improvements Act, 28 U.S.C. §2254(d); the Appellate Division's ruling was not contrary to, or an unreasonable application of, Supreme Court authority. A failure to request relief usually constitutes a procedural error, but at some level, there is a lack of merit to a point of error that was never raised below. In other words, Supreme Court authority does not require a state court to rule in favor of a petitioner as to relief that was not requested.

Moreover, even were we to transmogrify counsel's request for a missing witness charge or a recall of the detective into a request for a suppression hearing, the inconsistency she alleged would not support that relief. At most, and as is often the case, all that trial counsel demonstrated was that the detective gave a summary in one document in describing various events that he more fully described in another document. A conclusion of false testimony that might have required invalidation of the arrest and the resultant suppression of the gun was nowhere near demonstrated, assuming *arguendo* that it was requested, which it was not.

## 8. Sufficiency and Weight of the Evidence

A claim that a jury's verdict was against the weight of the evidence raises an issue solely of state law and thus is not cognizable on federal habeas corpus review. Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092 (1990) (holding that habeas corpus review is not available where there is simply an alleged error of state law); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("[A] writ of habeas corpus cannot be used to review the weight of evidence . . .."), aff'd, 263 U.S. 255, 44 S. Ct. 103 (1923).

As to the sufficiency of the evidence, a petitioner asserting constitutional insufficiency must overcome a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). A reviewing court must view "the evidence in the light most favorable to the prosecution," and may only grant habeas relief if the petitioner has shown that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 324, 99 S. Ct. 2781 (1979). In making this determination, a reviewing court may not "make its own subjective determination of guilt or innocence." Herrera v. Collins, 506 U.S. 390, 402, 113 S. Ct. 853 (1993) (quoting Jackson, 443 U.S. at 320 n.13). Rather, the reviewing court must defer to the jury in making "assessments of the weight of the evidence or the credibility of witnesses" and construe "all possible inferences that may be drawn from the evidence" in the prosecution's favor. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996). "Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, and this evidence must not be reviewed piecemeal, but rather as a whole." Id. (internal citations omitted).

The evidence of guilt here, both direct and circumstantial, was far in excess of the constitutional minimum. It was undisputed that petitioner possessed illegal weapons on each of the two dates supporting the separate charges. Under the New York statute (Penal Law §265.15(4)), illegal possession is presumptive evidence of intent to unlawfully use the weapons. Petitioner admitted in his videotaped confession that he shot the victim and that he had been carrying that gun around for a week prior to the shooting.

The key issue on both charges was whether petitioner intended to use the weapons unlawfully. Even without the presumption, there was plenty of circumstantial evidence to show that he did. As to the first possession charge, the medical examiner's testimony that the victim

17

had been shot three times in the back, coupled with the fact that petitioner carried that gun around for a week before the shooting, was sufficient to demonstrate unlawful intent. The evidence on the second charge, in which petitioner had been carrying another loaded weapon for months, allowed a rational jury to conclude unlawful intent as well. This was a case, as are most cases, in which intent has to be inferred from the petitioner's conduct, and numerous New York cases recognize that carrying around an illegal weapon for a period of time will constitute evidence of intent to unlawfully use the weapon. See, e.g., People v. Williams, 1 A.D.3d 284, 767 N.Y.S.2d 588 (1st Dep't 2003); People v. Rowe, 271 A.D.2d 217, 707 N.Y.S.2d 27 (1st Dep't 2000). The Appellate Division did not misapply Supreme Court authority in rejecting the sufficiency challenge.

## 9. Response to Jury Note

On the first and again on the second day of deliberations, the jury requested, *inter alia*, a copy of the charge pertaining to criminal possession of a weapon in the second degree, stating that it was "a big point of contention in here." The trial judge advised the jury that it would be administratively difficult to provide the written charge, and instead re-read the instruction on that charge. Petitioner claimed in the Appellate Division and claims here that reading the charge instead of providing a written copy constituted a denial of due process. The Appellate Division rejected that argument on the merits.

Petitioner's appellate counsel cited no Supreme Court authority that would require tendering the written instructions as opposed to re-reading them orally, and, of course, there is none. Both under federal law and state law, the trial judge has broad discretion in determining how to respond to juror questions. See United States v. Parker, 903 F.2d 91, 101 (2d Cir. 1990) ("The trial judge is in the best position to sense whether the jury is able to proceed properly with

its deliberations, and he has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion."); N.Y. Crim. Proc. Law §310.30 (upon questions from the jury, the trial court "must give such requested information or instruction as the court deems proper"). The Appellate Division's sustaining this exercise of the trial court's discretion was not contrary to, or an unreasonable application of, any Supreme Court authority.

## 10. Sentencing Challenge

In the Appellate Division, petitioner challenged his sentence as disproportionate under the New York Constitution. He expressly disclaimed any challenge under the Eighth Amendment to the U.S. Constitution, recognizing that the disproportionality argument he was making had no viability under federal constitutional law, and citing Harmelin v. Michigan, 501 U.S. 957, 111 S. Ct. 2680 (1991), for that proposition. There is no dispute that petitioner's sentence was within the parameters that state law allows, see White v. Keane, 969 F.2d 1381 (2d Cir. 1992), and the Appellate Division's ruling on a point raised exclusively under state law and disclaiming reliance on the U.S. Constitution does not present an issue cognizable on federal habeas corpus review.

## 11. Ineffective Assistance

A claim of ineffective assistance of counsel is evaluated under the two-part standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). A petitioner must show that (1) counsel's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) the deficient performance prejudiced the defense. Id. at 687. However,

19

there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. Thus, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.

Id. at 697.

In the Appellate Division, petitioner's counsel identified three errors allegedly made by trial counsel: (a) at the Huntley hearing, she conceded the voluntariness of petitioner's statement to the Assistant District Attorney, choosing not to cross-examine the detective who testified or make any argument concerning admission of the confession; (b) her request, withdrawal and subsequent reinstatement of the request for a missing witness charge "negatively impacted" the request; and (c) although trial counsel preserved the insufficiency of the evidence point at trial, she did not make her substantive argument on that point until sentencing, and even then, it was perfunctory.

Even assuming *arguendo* that counsel's conduct fell below an objective standard of reasonableness, there was no prejudice under the second prong of Strickland. Each of these points is addressed above. First, the Huntley hearing disclosed that petitioner had received his Miranda rights twice, the second instance of which was before an Assistant District Attorney, who took his videotaped confession. No amount of cross-examination or argument was going to fatally undermine those facts. Second, petitioner could not satisfy any of the requirements for a missing witness charge under New York law, so trial counsel's withdrawal and reinstatement of that request was not the reason it was denied. Finally, the evidence of guilt was more than sufficient to place the case before the jury, so it did not matter when petitioner made her argument as to that insufficiency.

Strickland does not require trial counsel to engage in an exercise in futility. See Booker v. Ricks, 02-CV-6456, 2006 WL 2239243, *13 (E.D.N.Y. Aug. 4, 2006). The Appellate Division's rejection of the ineffective assistance claim was not contrary to, or an unreasonable application of, Strickland.

## CONCLUSION

The application for habeas corpus relief is denied, and the petition is dismissed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962). The Clerk of the Court is directed to mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
_____
U.S.D.J.,

Dated: Brooklyn, New York
       December 30, 2009